```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

THOMAS MARMOLEJAS,                  :

                Petitioner,         :
                                        MEMORANDUM DECISION
        - against -                 :
                                        05 Civ. 10693 (DC)
UNITED STATES OF AMERICA,           :   99 Cr. 1048 (DC)

                Respondent.         :

- - - - - - - - - - - - - - - - - -x


APPEARANCES:        THOMAS MARMOLEJAS
                    Petitioner Pro Se
                    U.S.P. Big Sandy
                    P.O. Box 2068
                    Inez, Kentucky  41224

                    MICHAEL J. GARCIA, ESQ.
                    United States Attorney for the
                      Southern District of New York
                         By:  Lisa R. Zornberg, Esq.
                              Assistant United States Attorney
                    One Saint Andrew's Plaza
                    New York, New York  10003
```

**CHIN, D.J.**

      Pro se petitioner Thomas Marmolejas[1] moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the ground that he was deprived of effective assistance of counsel.  For the reasons set forth below, the motion is denied.

---

[1] In the instant motion, Marmolejas spells his name "Marmolejos."  At all prior stages of this case -- the trial, the sentencing, and the appeal -- defendant, defense counsel, the Government, and the courts have spelled defendant's name "Marmolejas."  For consistency, I continue that spelling.

## BACKGROUND

### A. The Facts

The Reyes heroin organization was a large-scale heroin distribution operation run by Juan ("Junior") Matos Reyes out of the Dominican Republic. (Tr.[2] 335, 363, 375). Johan ("El Profesor") Pena-Perez and an individual known as El Potro ran the New York organization under Junior's direction. (Id. at 375, 377).

In May 1998, Andres Peralta, a member of the organization, hired Jaime Gomez, Marmolejas, and Johnny Martinez to kill Pena-Perez and Nilton ("Barbita") Duran. (Id. at 383-85). Junior wanted the two men killed because they had allegedly turned against the organization by robbing one of its own apartments and taking one or two kilos of heroin, between $30,000 and $100,000 in cash, and a beeper that the organization's customers used to contact it. (Id. at 377, 380, 382-83).

On May 25, 1998, Peralta met with Junior's brother, Robinson Reyes ("Robinson"), Gomez, Marmolejas, and Martinez at 230th Street and Bailey Avenue in the Bronx. (Id. at 385, 389). Gomez, Marmolejas, Martinez, and Robinson then made their first attempt to locate Pena-Perez and Duran. (Id. at 389, 392). They

---

[2] References are as follows: "Tr." to pages of the trial transcript, "Sen. Tr." to pages of the sentencing transcript, "Pet. Mem." to Marmolejas's memorandum of law in support of the instant motion, and "Gov't Resp." to the Government's letter-brief in response to the motion.

drove to a building in the Bronx and waited four or five hours for Pena-Perez and Duran to emerge from the building, but they did not.  (Id. at 399-401).

On May 26, 1998, the next day, the same individuals met at 230th Street and Bailey Avenue again.  (Id. at 402). Marmolejas drove the group to the same location where they had waited the previous evening, and they waited for Pena-Perez and Duran again, for six hours or more.  (Id. at 334, 404, 424, 428). Finally, Pena-Perez and Duran exited the building, got inside a Toyota Camry, and drove away.  (Id. at 434, 435, 437).  The men in the van followed, and when the Camry stopped on Walton Avenue at a red light, Gomez took out a machine gun from a secret compartment in the van.  (Id. at 441-42).  Gomez got out, carrying the machine gun, and fired about 15 to 20 shots at the Camry.  (Id. at 441-42, 455).  The Camry took off, the van followed, and the Camry then crashed into another car.  (Id. at 456-57).  Duran exited the Camry and ran.  (Id. at 457-58). Gomez had returned to the van, but when he saw Duran run from the Camry, he took a pistol and ran after Duran.  (Id. at 459).

Several plainclothes officers from the New York City Police Department were on patrol in the area, and they immediately went to Walton Avenue after hearing the gunshots. (Id. at 100-01).  There, they saw Gomez run inside 1729 Walton Avenue carrying a gun and heard shots being fired inside the building.  (Id. at 102, 155).  The officers followed Gomez into the building.  (Id. at 102).  They momentarily retreated before

re-entering the building, where they encountered Gomez coming down the stairs. (Id. at 102-03). When Gomez saw the officers, he dropped his weapon and fled up the stairs. (Id. at 103). The officers chased him. (Id. 104-05). While Gomez was running up the stairs, the officers found Duran bleeding on the third floor landing. (Id. at 105, 115). Duran yelled "that guy just shot me" and pointed up the stairs. (Id. at 158). The officers caught Gomez on the roof and arrested him. (Id. at 159). Pena-Perez was found dead in the Camry on Walton Avenue. (Id. at 108, 131, 160).

In the meantime, Marmolejas and Robinson drove off and discarded the weapons. (Id. at 693-94). Later that evening, Marmolejas collected $37,000 from members of the organization for the shooting of Pena-Perez. (Id. at 694-95).

Marmolejas was arrested on June 4, 1998, inside the same van that he had driven to the murder scene. (Id. at 884, 909). The van had been painted a different color and re-stocked. (Id. at 856-61, 871-79). The arresting officers found the van's secret compartment, which could only be operated from the driver's seat. (Id. at 995-96). The compartment contained a .38 caliber revolver, a 9-millimeter Smith & Wesson semi-automatic pistol, a .22 caliber semi-automatic pistol, a 9-millimeter semi-automatic pistol, numerous rounds of live ammunition, and a silencer. (Id. at 864-65, 871-73, 876).

**B.  Prior Proceedings**

    1.  **Proceedings in this Court**

The original indictment was filed on October 12, 1999, but was superseded by subsequent indictments filed on October 16, 2001 and November 20, 2001.  The second superseding indictment contained eight counts.  Count One charged the defendants with conspiracy to commit robbery and extortion, in violation of 18 U.S.C. § 1951.  Count Two charged conspiracy to commit murder-for-hire and Count Three charged substantive murder-for-hire, both in violation of 18 U.S.C. § 1958.  Count Four charged conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. § 846.  Count Five charged defendants with murder while engaged in a major drug conspiracy, in violation of 21 U.S.C. § 848(e)(1)(A).  Count Six charged defendants with using and carrying firearms in relation to crimes of violence, in violation of 18 U.S.C. § 924(c).  Count Seven charged murder in the course of a § 924(c) violation, pursuant to 18 U.S.C. § 924(j), and Count Eight, filed against Marmolejas alone, charged possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k).

Valerie Amsterdam represented Marmolejas at trial and sentencing.  Marmolejas pled not guilty on November 27, 2001, and the trial of the charges against him and Jaime Gomez began on January 14, 2002.  At trial, Marmolejas testified that he was completely unaware of the plan to kill Pena-Perez and Duran; he

thought the men he was driving in the van were going to get a beeper back from someone.  (Tr. 1224-27, 1278).  On February 1, 2002, the jury found Marmolejas guilty on all eight counts.  On July 25, 2002, I vacated the guilty verdict on Count Five, finding that the jury's guilty verdict on that count was inconsistent with its finding with respect to Count Four that the Government failed to prove that Marmolejas knew the conspiracy involved a kilogram or more of heroin.  See United States v. Gomez, 210 F. Supp. 2d 465, 479 (S.D.N.Y. 2002).

On September 19, 2002, Marmolejas was sentenced on Counts One, Two, Three, Four, Six, Seven, and Eight to life imprisonment, followed by a consecutive ten-year term and three years' supervised release, and $700 in special assessments.

### 2. **The Appeal**

With Amsterdam as his counsel, Marmolejas filed a notice of appeal to the United States Court of Appeals for the Second Circuit on September 25, 2002.  Amsterdam filed an appellate brief on Marmolejas's behalf on May 6, 2003.  One year later, on May 6, 2004, oral argument was held on Marmolejas's direct appeal.  Amsterdam filed a post-argument letter on behalf of Marmolejas on May 10, 2004.  On October 21, 2004, the Second Circuit affirmed Marmolejas's conviction and sentence.[3]  See United States v. Marmolejas, 112 Fed. Appx. 779, 784 (2d Cir.

---

[3] A modified summary order was filed in the Second Circuit on October 27, 2004.  The mandate was issued on December 7, 2005 and filed in the District Court on December 13, 2005.

2004). Marmolejas did not petition the Supreme Court for certiorari.

On August 31, 2005, Amsterdam was relieved as counsel for Marmolejas and new counsel, Laurie Hershey, was appointed to consider whether there should be remand to this Court in light of United States v. Booker, 543 U.S. 220 (2005) (holding that sentencing guidelines are no longer mandatory). By letter dated November 1, 2005, Hershey advised the Second Circuit that she did not see any basis for a Booker remand because the statute under which Marmolejas was sentenced, 18 U.S.C. § 1958, mandated death or a life sentence. (Gov't Resp. Ex. F).

## C.   **Amsterdam's Indictment and Conviction**

On October 21, 2003 -- more than five months after Amsterdam filed Marmolejas's appellate brief -- the United States Attorney's Office for the Eastern District of New York ("E.D.N.Y.") began a criminal investigation of Amsterdam. (Gov't Resp. 2). On April 22, 2004 -- a few weeks before oral argument on Marmolejas's appeal -- Amsterdam was indicted in the E.D.N.Y. for crimes relating to the fraudulent billing of the government for Criminal Justice Act fees. The charged conduct related to her representation of five criminal defendants, none of whom was Marmolejas.[4] Though Amsterdam had recently been indicted when

---

[4] Though the names of the criminal defendants are not revealed in the indictment, the description of the charges brought against each of those defendants makes clear that Marmolejas was not among them. (Gov't Resp. Ex. A). Further, the Assistant United States Attorney who prosecuted Amsterdam confirmed that Amsterdam's representation of Marmolejas did not

Marmolejas's appeal was argued, the Second Circuit did not conduct a <u>Curcio</u> hearing; indeed, the subject of her indictment was not formally raised. (Gov't Resp. Ex. E). On April 4, 2005, Amsterdam pled guilty to conspiracy to defraud the United States.

**D.   This Motion**

This motion pursuant to 28 U.S.C. § 2255 was filed by Marmolejas <u>pro se</u> on December 12, 2005. On August 21, 2006, the Government submitted a response to the motion.

## DISCUSSION

Marmolejas argues that his attorney Valerie Amsterdam provided ineffective assistance in three respects. First, he contends that she failed at sentencing to challenge the propriety of a life sentence. Second, he contends that she failed on appeal to challenge the sufficiency of the evidence with respect to his conviction on Count Three. Third, he contends that Amsterdam failed to provide conflict-free representation on appeal as she came under investigation by the E.D.N.Y. while the appeal was pending -- after the appeal was briefed but before it was argued. I address each of these claims in turn after first discussing the legal standards applicable to ineffective assistance claims.

**A.   Applicable Law**

To prove ineffective assistance of counsel, Marmolejas must show that (1) his counsel's performance fell below an

---

come up in the E.D.N.Y. case. (Gov't Resp. 2).

objective standard of reasonableness under prevailing professional norms, and (2) he was prejudiced by counsel's deficient performance.  See Strickland v. Washington, 466 U.S. 668, 686-88 (1984); United States v. Vegas, 27 F.3d 773, 777 (2d Cir. 1994).  To demonstrate prejudice, Marmolejas must show that, but for counsel's errors, there is a sufficient probability that the outcome of the proceeding would have been different.  See Strickland, 466 U.S. at 694.

Although the Strickland test originated for evaluating claims of ineffective assistance of trial counsel, it has been extended to apply to appellate counsel.  See McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992).  Appellate counsel is not required to raise all non-frivolous arguments.  Mayo, 13 F.3d at 533.  Consequently, to succeed on an ineffective assistance of appellate counsel claim, it is not sufficient to demonstrate that counsel omitted a non-frivolous argument.  Id.  "[I]ndeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy."  Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989).  Failure to raise an argument on appeal constitutes ineffective assistance only when the omitted issue is "clearly stronger" and more significant than those presented.  Mayo, 13 F.3d at 533 (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1985)).

To show prejudice by appellate counsel's failings under

the second prong of the Strickland test, Marmolejas must establish a reasonable probability that the omitted "claim would have been successful before the [appellate court]." See Mayo, 13 F.3d at 534 (quoting Claudio, 982 F.2d at 803).

The "right to effective assistance of counsel includes the right to representation by conflict-free counsel." United States v. Blau, 159 F.3d 68, 74 (2d Cir. 1998). Attorney conflict claims fall into one of three categories: (1) per se conflicts, (2) actual conflicts, and (3) potential conflicts. See United States v. Williams, 372 F.3d 96, 102 (2d Cir. 2004).

A per se conflict is one so severe that reversal of a conviction is required, even absent a showing of prejudice. Id. at 103. The Second Circuit has limited per se conflicts to circumstances where the attorney was not authorized to practice law or was implicated in the "'same or closely related criminal conduct' [to that] for which the defendant is on trial." Id. (quoting United States v. Fulton, 5 F.3d 605, 611 (2d Cir. 1993)).

In contrast, an actual conflict exists where "the interests of a defendant and his attorney 'diverge with respect to a material factual or legal issue or to a course of action.'" Id. (quoting United States v. Schwarz, 283 F.3d 76, 91 (2d Cir. 2002)). Where a defendant was denied his right to conflict-free counsel based on an actual conflict, he "need only establish (1) an actual conflict of interest that (2) adversely affected his counsel's performance." Schwarz, 283 F.3d at 91. To do so, the

defendant must demonstrate a lapse in representation resulting from the conflict, which occurs when "some 'plausible alternative defense strategy or tactic might have been pursued,' and that . . . 'alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" Id. at 92 (quoting United States v. Levy, 25 F.3d 146, 157 (2d Cir. 1994)).

A potential conflict exists where "the interests of the defendant may place the attorney under inconsistent duties at some point in the future." United States v. Kliti, 156 F.3d 150, 153 n.3 (2d Cir. 1998). Even where a potential conflict exists, the Sixth Amendment is violated only if the conflict resulted in prejudice to the defendant. Levy, 25 F.3d at 152.

**B.   Application**

### 1.   Marmolejas's Sentence

Under the United States Sentencing Guidelines, Marmolejas's base offense level was 43 -- the level applicable to first degree and premeditated murder. He argues, however, that Amsterdam should have urged the Court to apply a base offense level of 33 for second degree murder. (Pet. Mem. 12). Marmolejas claims that the jury did not "expressly [or] necessarily" find the facts necessary to convict him of premeditated murder. (Id. at 17). He therefore maintains that "the district court made determinations of facts that should have been left to the jury" (id. at 13), in violation of Apprendi v. New Jersey and Booker. See Apprendi, 530 U.S. 466, 490 (2000)

(holding that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"); Booker, 543 U.S. at 245-46 (same and holding that sentencing guidelines are advisory).

Marmolejas's argument fails for the following reasons.

First, Marmolejas's claim that his conviction for murder-for-hire was not a conviction for premeditated murder has no merit. Marmolejas played an active role in the murder of Pena-Perez and the attempted murder of Duran, and he collected $37,000 for his involvement. A murder committed in exchange for a pre-agreed upon sum of money is inherently premeditated. Thus, Marmolejas's offense level was based upon the jury's verdict and not judicial fact finding.

Second, Marmolejas's life sentence did not exceed the maximum statutory sentence set by 18 U.S.C. § 1958, and all facts necessary for conviction of this offense were proven to the jury beyond a reasonable doubt. The statute provides that "if death results, [defendant] shall be punished by death or life imprisonment, or shall be fined not more than $250,000, or both." 18 U.S.C. § 1958 (emphasis added). A violation of the statute therefore requires imposition of a life sentence. Even if there were discretion, a life sentence was permitted under the statute and was warranted in this case.

Third, Marmolejas's counsel did in fact challenge the imposition of a life sentence. At sentencing, Amsterdam argued

that 18 U.S.C. § 1958 did not mandate a life sentence and that to impose such a sentence would be cruel and unusual punishment. (Sen. Tr. 10, 17). Specifically, Amsterdam argued that under the plain words of the statute, the Court could impose a life sentence <u>or</u> a fine, or both. (<u>Id.</u> at 10) (emphasis added). I rejected that argument, stating:

> [I]t's clear to me that the intent [of the statute] is that it be a mandatory life imprisonment, that the intent is that there is no discretion. The intent is not that the Court can simply fine in lieu of a sentence of life or death, and accordingly, a life imprisonment is a mandatory term of imprisonment . . . .
>
> Even assuming there is some discretion here . . . I believe that a sentence of life is the appropriate one . . . . This was a murder for hire. This was not a crime of passion. Mr. Gomez and Mr. Marmolejas participated in murder for money, for $37,000, and I think the interests of justice require a sentence of life.

(<u>Id.</u> at 33-34).

Finally, even if Amsterdam had failed to challenge these issues at sentencing, such failure does not fall below an objective standard of reasonableness. Moreover, Marmolejas cannot demonstrate that he was prejudiced by any such failure. Indeed, the Second Circuit rejected an identical challenge raised on appeal. <u>See</u> <u>United States v. Marmolejas</u>, 112 Fed. Appx. 779, 784 (2d Cir. Oct. 27, 2004) ("strongly doubt[ing] the merits of Marmolejas's statutory argument" but declining to reach the merits because Court acted within its discretion in imposing life imprisonment).

2.   **Sufficiency of the Evidence**

Marmolejas claims that there was insufficient evidence to support his conviction of murder-for-hire "because the government presented no evidence . . . [that his] actions directly facilitated or encouraged the use of a facility in interstate commerce." (Pet. Mem. 27). He argues that Amsterdam was ineffective in not challenging the sufficiency of the evidence on Count Three.[5]

In evaluating a claim of insufficiency of evidence, the court must review the evidence in the light most favorable to the prosecution. Jackson v. Virginia, 443 U.S. 307, 319 (1979). A guilty verdict should be affirmed if "'any rational trier of fact could have found the essential elements' of the charged crime 'beyond a reasonable doubt.'" United States v. Salmonese, 352 F.3d 608, 618 (2d Cir. 2003) (citing Jackson, 443 U.S. at 319). In cases where the facts support conflicting inferences, the reviewing court must presume that the jury "resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326; see also United States v. Chacko, 169 F.3d 140, 148 (2d Cir. 1999).

The murder-for-hire statute provides that:

> [w]hoever travels in or causes another . . .
> to travel in interstate or foreign commerce,
> or uses or causes another . . . to use . . .

---

[5]   To the contrary, a review of the transcript of oral argument on appeal shows that Amsterdam repeatedly emphasized the purported weakness of the Government's case against Marmolejas. (See, e.g., Gov't Resp. Ex. E at 2, 6).

> any facility of interstate or foreign commerce, <u>with intent that a murder to be committed</u> . . . as consideration for the receipt of, or as consideration for a promise to pay anything of pecuniary value, or who conspires to do so, . . . if death results, shall be punished by death or life imprisonment, or shall be fined not more than $250,000, or both.

18 U.S.C. § 1958 (emphasis added).  The intent element relates to murder, not interstate commerce.  <u>See</u> <u>United States v. Winters</u>, 33 F.3d 720, 720 (6th Cir. 1994) (holding that there is no intent requirement with respect to use of interstate facilities); <u>United States v. Edelman</u>, 873 F.2d 791, 794-95 (5th Cir. 1989) ("government need not establish that [defendant] intended that the mail be used or that he even knew the mail was used.").  Thus, unless no rational trier of fact could have found that Marmolejas intended for a murder to be committed, Marmolejas's claim must fail.

For two days, Marmolejas waited for the victims in a van with Gomez, Martinez, and Robinson for a total of approximately ten hours.  He drove the van in a car chase in pursuit of the victims, and after Gomez shot at the victims, continued to drive after them.  The machine gun that Gomez used was housed in the van's secret compartment, which was operated from the driver's seat.  Marmolejas later collected $37,000 for the shooting of Pena-Perez.  Based on these facts, a rational trier of fact could find that Marmolejas intended for a murder to be committed.  Marmolejas cannot demonstrate a reasonable probability that his claim would have been successful before the

Second Circuit.  Accordingly, the claim, to the extent it is based on failure of counsel to challenge sufficiency of the evidence, is denied.

### 3. Ineffective Assistance of Counsel Due to Conflict of Interest

Marmolejas argues that the ongoing criminal proceedings against Amsterdam created an actual conflict of interest that violated his Sixth Amendment right to conflict-free counsel.

Marmolejas has not alleged, nor could he, that there was a per se conflict.  Amsterdam was authorized to practice law, and the nature of her criminal conduct was not the same or closely related to the conduct underlying Marmolejas's criminal conviction.

Instead, Marmolejas alleges that the criminal investigation and charges against Amsterdam created an actual conflict of interest.  This claim fails because Amsterdam's interests were not divergent from Marmolejas, and there was no lapse in representation.

First, there was no actual conflict.  Amsterdam filed the appellate brief on behalf of Marmolejas more than five months before the investigation of her even began.  Though she had been indicted at the time of oral argument, a review of the transcript of the oral argument indicates that she zealously pursued the same arguments raised in the appellate brief.  Moreover, the charges against Amsterdam were unrelated to Marmolejas and were brought by a different prosecutor's office.  There is no basis

for concluding that Amsterdam's interests were divergent from Marmolejas's interests.

Second, even assuming an actual conflict existed, there was no lapse in representation.  Amsterdam attacked Marmolejas's conviction on several evidentiary grounds before the Second Circuit.  She aggressively pursued these claims both in the appellate brief and at oral argument.  Marmolejas argues, however, that Amsterdam's failure to challenge his sentence under Booker or Blakely v. Washington, 542 U.S. 296 (2004), was a lapse in representation attributable to a conflict of interest.  This argument fails.  As discussed above, the statute under which Marmolejas was convicted required a life sentence and therefore did not violate Blakely.  See id., 542 U.S. at 303-04 (holding that jury must decide all facts relied upon to sentence defendant above statutory maximum).  Because a life sentence was mandatory under the statute, counsel appointed to evaluate whether Marmolejas's sentence presented any Booker issues concluded that there was no basis for a remand.  As Marmolejas's challenge based on insufficiency of the evidence is meritless, any failure to raise this issue on appeal was likewise not a lapse in representation.

Marmolejas cannot demonstrate either an actual conflict or a lapse in representation.  Moreover, even assuming there was a potential conflict, Marmolejas cannot demonstrate any prejudice because the omitted arguments are meritless.  Thus, his claim of

ineffective assistance of counsel due to conflict of interest is denied.

## CONCLUSION

For the forgoing reasons, the motion pursuant to 28 U.S.C. § 2255 is denied. Because petitioner has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. See 28 U.S.C. § 2253 (1996) (as amended by the Antiterrorism and Effective Death Penalty Act). I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision would not be taken in good faith.

The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:   New York, New York
         September 15, 2006

                                        DENNY CHIN
                                        United States District Judge